UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEVON GROVES,                      )
                                   )
                    Petitioner     )
        vs.                        )      CAUSE NO. 3:11-CV-89 RLM
                                   )      (arising out of 3:06-CR-69 RLM)
UNITED STATES OF AMERICA,          )
                                   )
                    Respondent     )

OPINION AND ORDER

Devon Groves filed a petition under 28 U.S.C. § 2255 and the court ruled

summarily on all of his claims but one. The remaining claim asserts that two of

his attorneys provided ineffective assistance of counsel by failing to tell the

government that Mr. Groves wanted to accept the government's proposed plea

bargain. The court heard evidence on that issue on August 2 and now holds that

the attorneys didn't provide ineffective assistance of counsel because Mr. Groves

only briefly wanted to accept the plea offer and never told his attorneys he wanted

to accept it.

To establish a violation of his Sixth Amendment right to effective assistance

of counsel, Mr. Groves must establish (1) that his attorneys' performance was

deficient, meaning that the attorney's performance "fell below an objective

standard of reasonableness"; and (2) that the deficient performance prejudiced his

defense, meaning a reasonable probability (enough to undermine confidence in the

outcome) "that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Strickland v. Washington, 466 U.S. 668,

687-688, 694 (1984). The court's review of counsel's performance must be "highly deferential" and Mr. Groves must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal citation and quotation marks omitted).

In at least some types of cases, an attorney's performance can be deficient with respect to plea negotiations; to show prejudice in such a case, a defendant must show that he, the prosecutor, and the court all would have accepted the plea agreement. Missouri v. Frye, 132 S. Ct. 1399, 1410 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012).

## I.

This is the chronology of pertinent events:

**June 15, 2006.** A grand jury indicts Mr. Groves on one count of possessing a firearm after a felony conviction. 18 U.S.C. § 922(g)(1).

**June 21.** The court appoints H. Jay Stevens to represent Mr. Groves.

**July 17.** Mr. Stevens files a motion to suppress.

**August 10-11.** The magistrate judge hears evidence and argument on the motion.

**August 21.** The magistrate judge submits his report, recommending the suppression motion's denial.

**August 23.** Well before a transcript of the suppression hearing is available, Mr. Stevens files a motion to continue the scheduled September 10 trial. Mr.

Stevens notes the need to prepare objections to the report and recommendation and another trial soon to occur before another judge.

**August 27.** Mr. Groves is very unhappy about how Mr. Stevens proceeded on the suppression issue. Mr. Groves believes an audio recording of a conversation between the police dispatcher and the arresting officer contains information that would be helpful to the defense (shortly after receiving the dispatch, the officer made a *Terry* stop of a car and arrested Mr. Groves, who was the rear seat passenger). Mr. Groves's belief in that recording's existence and pertinence to suppression will affect much of his relationships with his first two attorneys. On August 27, Mr. Groves writes to the court — the second of the eighteen letters Mr. Groves eventually will send to the court in this case — asking for that recording. The court strikes that letter from the record because Mr. Groves is represented by counsel.

Also on August 27, Mr. Groves writes to the court, asserting his speedy trial rights and objecting to any continuance.

**August 30.** Before receiving Mr. Groves's second August 27 letter, the court holds a hearing on the continuance motion and grants it, scheduling a September 14 conference to reset the deadlines for objections to the report and recommendation and the trial date.

**September 14.** The grand jury returns a superseding indictment charging Mr. Groves with one count of felon in possession of ammunition and one count of felon in possession of a firearm. Also on that date, the court sets a September 25

deadline for objections to the report and recommendation, sets an October 5 hearing on the anticipated objections, and sets the trial for November 6.

Also on September 14, Mr. Groves writes to the court asking the court to review jail recordings of his July and August telephone conversations with Mr. Stevens. In one of those conversations, Mr. Groves says, Mr. Stevens told him that the prosecutor had the recording of the conversation between the dispatcher and the arresting officer, though Mr. Stevens now denies (Mr. Groves says) ever saying that.

**September 21.** Just before Mr. Groves's arraignment on the superseding indictment, Mr. Groves calls Mr. Stevens a liar and tells him he wants a different lawyer. Mr. Stevens files his motion to withdraw later that day, and Mr. Groves writes his own letter to the court asking for Mr. Stevens's removal and accusing Mr. Stevens of lying to him twice. The court receives Mr. Groves's letter on September 25.

**September 25.** The court holds a hearing and grants Mr. Stevens's motion to withdraw. Attorney Anthony Kowals is appointed to represent Mr. Groves later that day.

**October 2.** Mr. Kowals moves for an extension of time within which to object to the report and recommendation and for a trial continuance. The court grants both motions and resets the trial for December 18.

**October 3.** Mr. Kowals meets with Mr. Groves at the jail for nearly an hour to discuss objections to the report and recommendation, but Mr. Groves only

wants to talk about the role of the dispatch tape and the possibility of filing a new suppression motion.

**October 13.** Mr. Kowals returns to the jail and meets with Mr. Groves for about 45 minutes. Mr. Kowals asks Mr. Groves if he is interested in plea negotiations. Mr. Groves says he doesn't want to plead guilty because his state probation would be revoked and he would have to serve an eight-month sentence.[1]

**October 24.** The defense objections are filed with the court. Mr. Kowals meets Mr. Groves at the jail that day and reminds him of the importance of Mr. Groves's family's efforts to get witness names and addresses.

**November 1.** The court overrules the objections to the report and recommendation and denies the suppression motion. The ruling angers Mr. Groves, who thought the outcome would have been different had the court considered the dispatch recording.

**November 6.** Mr. Groves is still upset when Mr. Kowals visits him at the jail. Mr. Groves speaks mostly of the suppression issue and tells Mr. Kowals he wants another suppression motion filed. Mr. Kowals tells Mr. Groves that that couldn't be done. Mr. Groves then accuses Mr. Kowals (and Mr. Stevens) of having disclosed confidential information to the government and asks Mr. Kowals to remove himself as counsel. Mr. Kowals files a motion to withdraw that day. In that motion, Mr. Kowals reports that Mr. Groves thinks he botched the suppression

---

[1] Mr. Groves denies saying this. For the reasons discussed later in these findings, the court credits Mr. Kowals's testimony on this point.

motion and communicated privileged information to the government. Mr. Kowals says those beliefs had "so poisoned the attorney-client relationship that any meaningful discussions with him have now become impossible," and Mr. Kowals can't "move forward with other aspects of this case, including preparing for trial."

**November 7.** The court sets the hearing on Mr. Kowals's motion to withdraw for November 8, and Mr. Kowals receives and reviews a plea agreement proposed by the government. Under the proposed agreement, (1) the government would promise to recommend (a) a maximum reduction for acceptance of responsibility and (b) a sentence at the low end of the applicable guideline range, and (2) Mr. Groves would waive (a) any right to seek a sentence outside the advisory range and (b) his right to appeal or otherwise challenge his conviction or sentence. The offer contained no expiration date. No other plea discussions will take place with the government.

**November 8.** Mr. Kowals gives Mr. Groves a copy of the proposed plea agreement in court at the hearing on Mr. Kowals's motion to withdraw. Unpersuaded that the attorney-client relationship was irretrievably broken, the court denies Mr. Kowals's motion to withdraw the next day.

**November 20.** Mr. Kowals meets with Mr. Groves at the jail. Mr. Groves wants to know how the guidelines would work. Mr. Groves still is upset about Mr. Kowals's refusal to file a second motion to suppress and tells Mr. Kowals that if he won't file another suppression motion, he shouldn't come back to see Mr. Groves.

**November 22.** Mr. Kowals returns to the jail and gives Mr. Groves a copy of the proposed plea agreement and a computation sheet comparing guideline computations with and without the plea agreement.[2] They discuss possible trial witnesses. Mr. Kowals says a jury might not believe one particular witness because the government had evidence that Mr. Groves tried to tamper with that witness. Mr. Groves doesn't respond well. He demands to know why Mr. Kowals would say something like that when all Mr. Groves wants is a new suppression motion. Mr. Kowals says he isn't going to file a new suppression motion, and Mr. Groves should get over it. Rather than get over it, Mr. Groves calls Mr. Kowals either a "f___'d up honky" or a racist m___ f____" and tells him to file another motion to withdraw.

Mr. Kowals files another motion to withdraw the same day. Mr. Groves also prepares his own handwritten motion for new counsel and mails it to the court the morning of his conversation with Mr. Kowals. Mr. Groves's letter reports that Mr. Kowals had been disrespectful to him, and further explains, "Today we was talking about a plea and I wasn't interested in a plea at all so he started talking about if I go to trial this is the time I face and I agreed only if I get found guilty."

Later that day. Mr. Groves tells fellow inmate Keith Jennings of his anger with his attorney, telling Mr. Jennings that Mr. Kowals showed up with a plea

---

[2] Mr. Groves says Mr. Kowals simply gave him the computation sheet without discussing it or even sitting down. Mr. Groves's anger during this meeting might lead him to remember it incorrectly. Mr. Kowals's time sheets say the meeting lasted .7 hours, leading the court to believe Mr. Kowals's recollection of the meeting.

agreement instead of the new suppression motion Mr. Groves wants. Mr. Jennings asks about the plea offer, and Mr. Groves shows it to him. Mr. Jennings says that if it were him, he'd take the plea and forget the suppression motion because he might not get a deal that good again.

For a brief time on November 22, Mr. Groves wants to plead guilty. He signs the proposed plea agreement and has the jail booking commander make a copy of it. Mr. Groves says he mailed a copy of the signed agreement to Mr. Kowals's office, but the court finds it more likely that he either didn't mail it because of a change of heart or that he mis-addressed the envelope.[3] In any event, Mr. Kowals never received it.

**December 5.** Mr. Groves and Mr. Kowals are in the courtroom for the hearing on Mr. Kowals's motion to withdraw.[4] The court grants Mr. Kowals's

---

[3] The testimony of Mr. Kowals and Mr. May is cross-corroborating and persuasive that the signed agreement never reached Mr. Kowals. Had it reached Mr. Kowals, it would have been placed in Mr. Kowals's file — but neither Mr. Kowals nor Mr. May (nor, for that matter, Mr. Groves) ever saw the agreement in that file. That Mr. Kowals received it and both he and Mr. May ignored it is the least likely possibility. That Mr. Kowals might have received the agreement and misplaced it is somewhat more probable, but still less likely than not. The court's receipt of eighteen letters from Mr. Groves supports the inference that when Mr. Groves mailed something, it reached the destination on the envelope. The jail booking commander testified that he copied and mailed many things for Mr. Groves, but understandably didn't remember mailing the plea agreement.

That leaves two possibilities — that Mr. Groves had second thoughts and never mailed the agreement, or that Mr. Groves tried to send it to Mr. Kowals but got the address wrong. Mr. Groves hadn't sent anything to Mr. Kowals's office before (his correspondence had come to the court), and it's impossible to know how accurately Mr. Groves addressed the mail. The court considers these two possibilities to be equally likely. The court doesn't choose between them because, under either scenario, the signed agreement never reached either Mr. Kowals or his successor.

[4] Mr. Groves testified this month that he told Mr. Kowals to "void" his letter seeking new counsel because he signed the plea agreement, and that Mr. Kowals said okay, but he couldn't represent Mr. Groves any longer because he couldn't represent someone who thought he was a racist m____ f____. Mr. Kowals recalls no such conversation. For reasons discussed at the end of this chronology, the court finds that the conversation Mr. Groves recalls didn't happen.

motion to withdraw and sets a status conference for December 12. The trial remains scheduled to begin on December 18.

The court appoints Brian May, a very experienced criminal defense attorney (as were Mr. Kowals and Mr. Stevens) to represent Mr. Groves.

**December 12.** The court sets the trial for January 17, 2007. On the same day, Mr. Groves sends the easily predictable letter seeking still another attorney, based on a conversation he thinks he had with Mr. May in 2002. The court denies that request without a hearing. Mr. Groves's letter makes no mention of a desire to plead guilty.

**December 14.** Mr. May retrieves Mr. Groves's file from Mr. Kowals. The two attorneys discuss the best way to defend Mr. Groves. The file contains no signed plea agreement.

**December 19.** Mr. May and Mr. Groves have their first conference at the jail. Mr. Groves says he wants to go to trial because he didn't do what he's accused of doing. They discuss the defense of the case and potential witnesses. Mr. Groves (whose attention to his attorneys in this case has left something to be desired) understands Mr. May to express doubt that Mr. Groves could be found guilty on both counts at trial, since no one saw him with a gun. Mr. May discusses Mr. Groves's sentencing exposure and explained that people who lose at trial pay an extra penalty in federal court. Mr. Groves insists on trial and never discusses the plea agreement he signed or any other potential resolution of the case without trial. Mr. May says he will subpoena the witnesses Mr. Groves wanted.

Some time shortly after the beginning of January 2007, Mr. Groves is moved from the St. Joseph County Jail to the Porter County Jail.

**January 8, 2007.** Because the court will be trying another criminal case, the court reschedules Mr. Groves's trial from January 17 to March 12.

**January 12.** Mr. Groves writes the court a letter complaining about the effect the continuance of his trial has on his speedy trial rights, implicitly criticizing Mr. May for allowing it to happen. The letter makes no mention of an intent to plead guilty; it demands a trial.

**January 19.** The court receives Mr. Groves's January 12 letter and, because Mr. Groves has counsel and hybrid representation hasn't been requested or allowed, the court declines to take action.

**February 2.** The court receives a letter from Mr. Groves dated January 22. The letter is difficult to summarize. He complains of his treatment and the names jail officers called him while he was at the St. Joseph County Jail, but also asks to be returned to the St. Joseph County Jail, saying the transfer to Porter County was unfair because the fight he had with another inmate wasn't his fault. Mr. Groves sends a similar letter to the court on February 1, and the court receives it on February 7. Neither letter mentions a desire to plead guilty.

In rescheduling the trial on January 8, the court believed it had already entered an "ends of justice" finding under what is now 18 U.S.C. § 3141(h)(7) in light of the change of counsel. The court had not done so, and the time allowed by

10

the Speedy Trial Act was rapidly elapsing, so the court schedules a status conference for February 5.

**February 5.** At a conference in court with both counsel and Mr. Groves, the court first advances the trial to February 7 to come into compliance with the Speedy Trial Act. Both counsel indicate that they need more time — for continuity of counsel for the government, and for trial preparation for Mr. May — so the court continues the trial to February 20 after making appropriate findings under the Speedy Trial Act.

Mr. Groves testified this month that at that conference, he asked Mr. May if he had seen anything in the file about a plea agreement. Mr. May testified that Mr. Groves never mentioned a plea — not on February 5 or any other day. For reasons set forth at the end of this chronology, the court credits Mr. May's testimony on this point.

Mr. Groves is returned to the Porter County Jail, not to return to St. Joseph County until February 17.

**February 18.** Mr. May meet with Mr. Groves at the county jail. The two prepare for trial. No mention is made of a guilty plea.

**February 19.** Mr. May meets with Mr. Groves at the county jail. The two prepare for trial. No mention is made of a guilty plea.

**February 20-21.** After the second day of trial, the jury finds Mr. Groves guilty of both counts of the superseding indictment.

**May 18.** At the conclusion of the sentencing hearing, the court sentences Mr. Groves to maximum 120-month sentences on each count, to be served consecutively for an aggregate 20-year sentence. Mr. May hands his full file to Mr. Groves, pleased to be done with him. The Marshals object to Mr. May giving Mr. Groves electronic media containing the evidence, but Mr. May refuses to retain it.

**March 17, 2009.** The court of appeals affirms Mr. Groves's conviction and sentence. With that, the letters from Mr. Grove resume. On May 24, he writes asking the name of the foreperson of the grand jury that returned the superseding information; the court denies that request. In a letter dated "May 39", Mr. Groves requests that counsel be appointed to file a petition under 28 U.S.C. § 2255; the court denies that motion without prejudice to renewing the motion after Mr. Groves files a petition under § 2255. Mr. Groves then sends letters requesting grand jury minutes, copies of exhibit lists, and transcripts of the non-evidentiary parts of the trial.

**March 2, 2011.** Mr. Groves files his petition under § 2255. Ground Five of the petition is "During pre-trial, movant's counsel was constitutionally ineffective in failing to fulfill movant's intention to plead guilty." The supporting facts are: "Defendant's signatured intention to plead guilty to counts[] one and two receded into the shadows when counsels failed to fulfill defendant's intention."

II.

A.

12

As has already been noted, the court has credited the testimony of Mr. Kowals and Mr. May (who testified that Mr. Groves never mentioned an intention to plead guilty) over that of Mr. Groves (who testified that he routinely asked both attorneys about the signed plea agreement). The court bases this credibility determination on three things:

1. Given the number and topics of Mr. Groves's letters to the court, it is simply inconceivable that Mr. Groves wouldn't have notified the court were Mr. May taking him to trial in the face of his desire to plead guilty. A review of the letters leaves the strong impression that no complaint was too minor for Mr. Groves to include it.

2. Mr. Groves testified that he kept asking his attorneys if they had found the signed plea agreement he mailed. But Mr. Groves had his own copy of that signed plea agreement. Mr. Jennings had encouraged Mr. Groves to have a copy made and keep it, and Mr. Groves did so. If his attorneys — and especially Mr. May as the trial date neared — told him they hadn't seen a signed plea agreement, and if Mr. Groves still wanted to plead guilty, he would have had another copy made to give to his attorney. He didn't do so.

Mr. Groves explains his failure to mention his copy to his attorneys as based on ambivalence. When Mr. May said (as Mr. Groves understood it, any way) there was a good chance of a trial victory, Mr. Groves says, he was just as happy that Mr. May couldn't find the plea agreement. But, Mr. Groves testified, he would have gone through with the deal had the signed agreement been located. The court

finds that explanation less than credible. Mr. Groves's letters to the court show anything but a man who will accept fate as it finds him. Had he wanted to accept the plea agreement, he would have said so. Had he not wanted to accept the plea agreement, he would have behaved exactly as did. Second, as already noted, Mr. Groves did nothing to indicate at any time after November 22 that he wanted to plead guilty. As Mr. May credibly testified, everything was "trial, trial, trial." Mr. Groves told his attorneys that he was innocent and wanted a trial. That's what he wanted, and that's what he got.

3. If Mr. Groves ever told Mr. May that he wanted to accept the government's offer, Mr. May would have jumped at it. Mr. May testified, quite credibly, that he found Mr. Groves to be demanding, assertive, and rude. The court can't imagine a scenario in which Mr. May, if faced with allowing Mr. Groves to accept the government's offer or, alternatively, sitting next to Mr. Groves and dealing with him for two days, would have taken the trial option. Mr. May's actions at the close of the sentencing speak eloquently to his feelings: he unloaded his entire file when the case was over (despite the marshals' objections), pleased that he didn't have to deal with Mr. Groves any more.

During a brief flicker of time on November 22, ignited by Mr. Jennings's good advice, Mr. Groves wanted to plead guilty. He might have gotten second thoughts on the same day (and so never mailed the agreement to Mr. Kowals), or his change of mind might have come some days later. But by the time he next

communicated with his then-attorney, Mr. Kowals, Mr. Groves didn't want to plead guilty, and he never wanted to plead guilty until the verdict was returned.

These findings resolve the claim that Mr. Groves made in his petition under § 2255: that his attorneys didn't follow through on his wish to accept the government's plea offer. Mr. Groves never told either Mr. Kowals or Mr. May that he wanted to plead rather than go to trial. Failure to notify the government of a client's uncommunicated wish to accept a plea offer does not fall below an objective standard of reasonableness. Even if it did, Mr. Groves hasn't shown the prejudice required by Strickland because he hasn't persuaded the court that he actually would have pleaded guilty before the court.

### B.

Mr. Groves has a second argument: he contends that because Mr. May didn't raise the issue of a possible plea agreement despite Mr. Groves's insistence on his innocence, Mr. May's performance fell below an objective standard of reasonableness. Mr. Groves believes the obligation to discuss resolution through a plea agreement arises from the Supreme Court's reasoning in Missouri v. Frye, 132 S. Ct. 1399 (2012), and Lafler v. Cooper, 132 S. Ct. 1376 (2012). The court disagrees, for several reasons.

First, it doesn't appear that the issue is properly before the court. Mr. Groves didn't raise this dimension of an effective assistance of counsel claim in his petition, and the court didn't order an evidentiary hearing on it. Mr. Groves filed

the petition himself, and papers presented without the help of a lawyer often are read generously in the filer's favor, but after counsel was appointed, the court allowed time within which an amended petition could be filed. None was filed, leaving us with counsel and a petition that wasn't based on the proposition that Mr. May needed to raise the issue of disposition by a plea to provide constitutionally sufficient representation.

Even if it is assumed that the argument is properly before the court, the court doesn't read the cited cases as providing support for the proposition that an attorney fails constitutional muster by not insisting on discussing plea bargaining with a client who demands trial. <u>Missouri v. Frye</u>, 132 S. Ct. 1399, considered three issues: (1) does <u>Strickland v. Washington</u> reach the pretrial stage in which plea negotiations most often occur? (2) if so, does a failure to convey a plea offer from the prosecution fall below an objective standard of reasonableness? and (3) if so, what must be shown to establish prejudice? The second inquiry, which focused on the first prong of <u>Strickland v. Washington</u>, was decided narrowly:

> This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Any exceptions to that rule need not be explored here, for the offer was a formal one with a fixed expiration date. When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.

132 S. Ct. at 1408. The Court considered nothing else with respect to the deficiency prong of <u>Strickland v. Washington</u>.

The issue in <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, was even narrower. Mr. Cooper's attorney conveyed a plea offer, but, based on a misunderstanding of the law, advised Mr. Cooper to reject the offer and go to trial. Mr. Cooper followed the advice, rejected the plea, was convicted at trial, and was sentenced to a term more than triple what he would have gotten under the offered plea bargain. Importantly, by the time the case reached the Supreme Court, both Mr. Cooper and the State of Michigan agreed that "the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds that he could not be convicted at trial. In light of this concession, it is unnecessary for this Court to explore the issue." 132 S. Ct. at 1384. The only issue the <u>Lafler</u> Court considered was how to apply the prejudice test of <u>Strickland v. Washington</u> under such circumstances. Nothing in <u>Lafler</u> touches further on the deficiency prong.

Nor does other case law support Mr. Groves's contention. In <u>Gardner v. United States</u>, 680 F.3d 1006 (7th Cir. 2012), the defendant was charged with possession of a firearm by a felon. He told his attorney that he didn't have a gun and was convicted at trial. He claimed his attorney provided ineffective assistance of counsel because he failed to explain that under <u>Simmons v. United States</u>, 390 U.S. 377, 394 (1968), a defendant's testimony at a suppression hearing can't be used at trial as evidence of guilt. Mr. Gardner contended that "competent counsel would have surmised that he denied possession for the sole reason that he did not know that Simmons prevents the government from using admissions received at a suppression hearing as evidence of guilt at trial," 680 F.3d at 1010, so

constitutionally sufficient representation requires defense counsel to explain Simmons even to a defendant who says he didn't possess the gun. The court of appeals concluded that the law doesn't go that far: "Gardner himself did not tell counsel that he possessed the gun, and so counsel had no reason to delve into a series of 'what if's' based on hypothetical possession. Although a savvy criminal defense lawyer might well question a client's denial of possession in this type of proceeding, we are not prepared to hold that a competent lawyer must always assume that her clients lie when they deny possession." Id. Although the circumstances of this case are far different from those in Gardner, an attorney who may, consistent with the Sixth Amendment, accept his client's factual statements would seem to have no duty to question the client's assertion that he wants a trial because he believes himself to be innocent.

The Supreme Court looked to the ABA Standards on Criminal Justice in reaching its decision in Missouri v. Frye, 132 S. Ct. at 1408-1409. The ABA Standards on for Criminal Justice 14-3.2(b) says, "To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision." Even if that standard is used as a springboard to reach the rule of law for which Mr. Groves argues, it wouldn't help Mr. Groves. To help Mr. Groves, the new rule would require that every attorney who represents a defendant must discuss plea negotiation options, even if that defendant previously triggered a change of

counsel by complaining that previous counsel wanted to talk about a plea. Further, the new rule would need to be absolute, supplanting the prejudice prong of <u>Strickland</u>: by the time of Mr. May's appearance, Mr. Groves not only knew of the possibility of plea negotiations, he had a hard copy of a proposed plea agreement in his possession and needed only to tell Mr. May he wanted to go forward with that agreement.

III.

For these reasons, the court DENIES Mr. Groves's petition for relief under 28 U.S.C. § 2255 (Doc. No. 151).

SO ORDERED.

ENTERED:  <u>August 17, 2012</u>

<u>/s/ Robert L. Miller, Jr.</u>
Robert L. Miller, Jr., Judge
United States District Court